Johnson, J.
1st. The conclusion that the note was only inceptive, until endorsed by the payee James C. Brown,' which is made the foundation of the first ground of the motion does not appear to the court to be warranted by the evidence. The consideration on which it was founded, (the money placed in defendant’s hands) was adequate, and whatever equities might have arisen as between themselves, out of the con-; tract to deliver it up on defendants paying one of the bonds, the note was transferred before it came to maturity, and it follows as a legal consequence, that the plaintiff, an indorsee withontmotice, is entitled to recover, unless indeed it is contaminated by the .supposed corrupt agreement on which it was transferred by Joshua Brown to O’Hara.
2nd. About the facts which relate to this matter, there is no difficulty. The note was endorsed in blank by the payee James C. Brown, and it» that situation, it was transferred by Joshua Brown to O’Hara, and by him to the plaintiff, '-both without further endorsement. The sum paid by Q’Ha~. ra, in consideration of the transfer to him, did not equal the nominal value of the-note by an amount far exceeding the legal rate of interest for the time which it had io run; and it is now contended in support of the second ground of the motion, that this contract was against. the statute of usury, and therefore void; and, hence, it is concluded, that the plaintiff having derived her interest from this corrupted source is not entitled to maintain her action. Courts of justice have universally laboured to untrammel the restraints on the circulation of negotiable paper as indispensably necessary to the existence of commerce. They constitute, indeed, the mainspring, .the very sinews of all commercial enterprise, and without them all its operations would be greatly impeded, if not wholly obstructed, and hence the great patronage which the law extends to them; and it may be safely laid down as a good general rule, that the innocent holder of a.negotiable paper transferable by delivery may maintain an action against the maker, however it may have been polluted by the *369 - immediate hands, through which it passed ; as where one had obtained possession of it by fraud and circumvention, or even by theft, a bonajide holder without notice may main - tain his action upon it.
There are, however, a few restraints imposed by positive regulations growing out of political experience, among whichgcontracts founded on usurious considerations, which are by the statute declared to be void, are perhaps the most prominent; and it will not be controverted, that no contract based on such considerations will confer the right of action, either in the parties themselves, or others claiming under them. And in the application of this rule, it has been contended in support of the motion, that as the plaintiff claims through O’Hara, who was party to the alleged corrupt agreement, she cannot maintain this action. Let us however, examine the nature of this contract. It is the undertaking of the defendants to pay to James C. Brown qr his order, and with his endosement in blank it becomes in effect, according to well settled rules, a note payable to bearer, it is, therefore, substantially, an undertaking to pay to whomsoever shall be in the possession of it. And thus the relationship or privity necessary to sustain an action isr established between the parties. This, therefore, must be regarded as a direct undertaking on the part of the defendants to the plaintiff.
The plaintiff declares as the indorsee of James C. Brown; and let us suppose that the defendant was put to plead the usury in bar; without following the technical language of such a plea it must substantially state, that the note was once in the hands of Joshua Brown, and that, in consideration of a certain corrupt and usurious agreement, he transferred it to O’Hara, both of whom are strangers to the record, and 1 think it would confound sophistry itself to establish by any deduction from principle, that, therefore, the' plaintiff was not entitled to maintain her action. Such a conclusion would be as wide of right reason, as that because * *370 man moves and breathes as veil as a horse, therefore, a man Ss'a horse.
The opinion of Lord Ellenborough in the case of Lowes and others vs. Mazarado and others, 1 Starkie’s Rep. 385, has been relied on’as conclusive in support of this ground, So far as the case itself is concerned, there is no disposition to find fault with the result ; it is in- strict accordance with well established principles, and which have been acted on by-this court in the cases of Payne and Smith, Fleming and Mulligan and many others; for in that ca-e the bill of exchange was drawn and indorsed by the payee and carried into-the market to raise money, and having been discounted at an usurious rate of interest, it was corrupted in its creation and was therefore void, andit was still more and more polluted even by the transfer to the plaintiffs. But admitting all that is said in that case to be law, and his lordship was 'made to say that the indorsement was entirely avoided by the statute, against usury, yet it is possible to distinguish this case . from that. If Joshua Brown may be regarded as a stranger; to the payee James C. Brown, and. that may be. fairly pre-». Sumed in favour of the verdict, the plaintiff is under no ne- . cessity of tracing her right through either of the parties to the corrupt agreément; her claim, exhibited on the record is directly from the payee.
• But I cannot reconcile such’ a doctrine with the well settled rule, that it is not usurious to sell or buy a negotiable-, paper founded on a legal consideration for less than its nominal value; and that such is the rule may be deduced without, the aid of authority from the universal practice and consent. of mankind. Bonds, notes, bills of exchange, bank notes, ■ certificates of stock and even . specie itself are the common subject of traffic, and their intrinsic value must always depend on such an infinite variety of circumstances, that no. foresight' or wisdom can regulate it. it is, therefore, I think wisely left to take care of itself, and I confess that after the most di» ligent effort, 1 have been unable to detect, in this case, a sip- *371 gle circumstance which distinguishes it from the ordinary case of selling a note for less than its nominal value. To declare that the parties to such traffic had, incurred the pains of usury, would convulse the whole commercial world to its ■center. ' ■
Peiignl, attorney general, for tlie motion.
JUcCradij, contra.
Motion refused.